UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| Michael Kalus, M.D., | ) | CASE NO. 1:24 CV 207 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Metropolitan Life Insurance Company, | ) | |
| as Administrator for the Lincoln National | ) | Memorandum Opinion and Order |
| Life Insurance Company, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Metropolitan Life Insurance Company's and the Lincoln National Life Insurance Company's Partial Motion to Dismiss Plaintiff's Complaint. (Doc. 10.) This is a breach of contract case. For the reasons that follow, the motion is GRANTED.

Plaintiff Michael Kalus, M.D. ("Dr. Kalus" or "Plaintiff") brings this lawsuit against defendants Metropolitan Life Insurance Company as Administrator for The Lincoln National Life Insurance Company ("MetLife") and The Lincoln National Life Insurance Company ("Lincoln National") (collectively, "Defendants"). For purposes of ruling on the pending motion, all well-plead factual allegations in Plaintiff's Complaint (Doc. 1) are presumed true.

Lincoln National previously issued two disability insurance policies to Dr. Kalus: first, in 1989 ("First Policy") and then another in 1991 ("Second Policy") (collectively, the "Policies"). Dr. Kalus purchased a "Lifetime Benefit Rider" ("Lifetime Rider") in addition to the benefits provided

under the Second Policy. Dr. Kalus alleges that he fulfilled the obligations required of him under both Policies, including paying the premiums for nearly thirty years. Both Policies provided for disability benefits to age sixty-five if disability started before Dr. Kalus's sixty-fifth birthday. Both Policies conditioned the amount of disability benefits on whether the disability experienced was a "total disability" or a "residual disability" as those terms were defined by the Policies.

Since 1988, Dr. Kalus has been self-employed as an Invasive Cardiologist. As an Invasive Cardiologist, a large portion of his medical practice involved cardiac catheterization procedures. In 2009, Dr. Kalus conducted 125 catheterizations; in 2010, he conducted 135; in 2011, he conducted 138; and in 2012, he conducted 131. In 2013, Dr. Kalus decreased the volume of his cardiac catheterization procedures due to symptoms of back pain with radiation to his left leg. In 2013, Dr. Kalus only performed 58 catheterizations; in 2014, he only performed 32; and in 2015, he only conducted 13. Due to increased pain and symptoms, on June 12, 2015, Dr. Kalus ceased performing cardiac catheterization procedures and has been unable to resume.

In November 2018, Dr. Kalus made a claim for disability benefits under both Policies by completing an application and providing it to Defendants. As part of his application for disability benefits, he submitted a list of treating physicians, the volume of cardiac catheterizations he had performed in the years 2009 to 2015, his neurologist records, the dates of his epidural injections, and copies of his physician's notes.

On December 21, 2018, Dr. Kalus received a letter from MetLife acknowledging that it had received his application and that it was reviewing his claim for "Residual Disability Benefits" and requesting various documents (including tax returns (business and individual) from 2008–2017, profit and loss statements from September 1, 2012 to the present, and documentation of monthly earnings

from September 1, 2012 to the present). Between January 2018 and February 2022, MetLife and Dr. Kalus (or persons acting as his representative) communicated through several letters about MetLife's review of Dr. Kalus's claim, including letters concerning MetLife's request for various financial documents. On February 16, 2022, MetLife advised Dr. Kalus that it was granting him benefits for "residual disability" as of October 1, 2015 through April 24, 2019 (Dr. Kalus's sixty-fifth birthday).

According to Dr. Kalus, at no time during the multi-year review process did MetLife advise Dr. Kalus that he was eligible for total disability benefits under both Policies, or that he was eligible for lifetime benefits under the Lifetime Rider on the Second Policy. On February 2, 2024, Dr. Kalus filed this suit against Defendants to recover those benefits.

Dr. Kalus's Complaint includes six counts against the Defendants: (1) breach of contract against Lincoln National; (2) intentional interference with contract against MetLife; (3) lack of good faith against Lincoln National and MetLife; (4) reasonable expectations against Lincoln National and MetLife; (5) equitable estoppel against Lincoln National and MetLife; and (6) declaratory relief against Lincoln National and MetLife. Defendants move to dismiss several of Dr. Kalus's claims under Rule 12(b)(6). Dr. Kalus opposes the motion.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F. App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer*

*Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

**ANALYSIS**

Defendants contend that four of Dr. Kalus's six alleged claims must be dismissed for failure to state a claim: (1) Count Two – intentional interference with contract against MetLife[1]; (2) Count Four – reasonable expectations against Lincoln National and MetLife; Count Five – equitable

---

[1] Defendants seem to read Dr. Kalus's Complaint as alleging a tortious interference claim against Lincoln National too. (Doc. 16, at 2 ("Dr. Kalus has no legally viable claim against Lincoln National in Count Two for intentional interference with contract, warranting dismissal with prejudice of Count Two against Lincoln National.") However, Dr. Kalus's Complaint includes no such allegations and, therefore, there is no intentional interference with contract claim against Lincoln National to dismiss.

estoppel against Lincoln National and MetLife; and Count Six – declaratory relief against Lincoln National and MetLife. The Court will address each in turn.

### 1. Count Two – Intentional Interference with Contract Against MetLife

In Count Two of his Complaint, Dr. Kalus alleges that MetLife's intentional interference caused Lincoln National to breach the contracts between Dr. Kalus and Lincoln National. To state a claim for tortious interference with contract under Ohio law, a plaintiff must allege "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., LPA v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999).

There seems to be no dispute that contracts (i.e., the Policies) existed between Dr. Kalus and Lincoln National and that MetLife, acting to administer the Policies on behalf of Lincoln National, knew about the contracts. But Defendants contend that MetLife, as the administrator of the Policies, was Lincoln National's agent and, therefore, cannot be liable for tortious interference with contract under Ohio law. In response, Dr. Kalus does not dispute that MetLife acted as Lincoln National's agent in its role as administrator of the Polices. (*See* Doc. 15, at 7 ("It is believed and asserted that an agreement between Met Life and Lincoln National delegated to MetLife the responsibility of investigating, deciding, and processing all claims made under the Lincoln National disability policies that were issued to Dr. Kalus."; *id.* at 8–9 ("[P]laintiff believes that MetLife is acting on behalf of Lincoln National as its Administrator . . . ."). Rather, Dr. Kalus contends that "Defendants cite to no case whereby an insurance company 'Administrator' cannot be held responsible for interfering with an insured's rights under a disability insurance policy." (Doc. 15, at 8.)

"In Ohio, a claim for tortious interference with contract can only be maintained against 'outsiders' to the contractual relationship." *Duggan v. Orthopaedic Inst. of Ohio, Inc.*, 2004 WL 951469, at *3 (N.D. Ohio Apr. 8, 2004). An "outsider" is "someone who is not a party or agent of the party to the contract or relationship." *See Dorricott v. Fairhill Ctr. for Aging*, 2 F. Supp. 2d 982, 989–90 (N.D. Ohio 1998). Still, "[a]n agent can be liable for tortiously interfering with the principal's contract[, but] only if [it] acted and benefitted from the alleged interference solely in [its] individual capacity." *The William Powell Co. v. Nat'l Indemnity Co.*, 141 F. Supp. 3d 773, 784–85 (S.D. Ohio 2015) (citing *Miller v. Wikel Mfg. Co., Inc.*, 545 N.E.2d 76, 79 (Ohio 1989)).

While Dr. Kalus alleges in a single paragraph that MetLife's actions were motivated by financial gain (Doc. 1 ¶ 41), there are no allegations that suggest MetLife acted for its own financial gain. Further, there are no allegations that MetLife acted outside its scope as Lincoln National's administrator when processing his claim. *See The William Powell Co.*, 141 F. Supp. 3d at 785 ("Since the complaint indicates that [the administrators'] alleged wrongful acts were within the scope of their agency with [the insurer], it is immaterial . . . that [plaintiff] also alleges that they allegedly were motivated solely by their own self-interest to cause [the insurer] to breach the insurance agreements.").

While Dr. Kalus is correct that the full scope of "the legal relationship between MetLife and Lincoln [National] or its role in the decision to properly deny [Plaintiff's] disability benefits," has not been developed through fact discovery (Doc. 15, at 8–9), this observation does nothing to save his claim. Dr. Kalus bears the burden of alleging facts in his Complaint that suggest MetLife acted and benefitted from the alleged interference solely in its individual capacity. This, Dr. Kalus has failed to do. Because Dr. Kalus has not included any allegations that MetLife acted outside the scope of its

6

role as Lincoln National's administrator when denying Plaintiff's claim, Plaintiff has not alleged a claim for tortious interference with contract under Ohio law. Accordingly, Count Two is dismissed as a matter of law.

    **2. Count Four – "Reasonable Expectations" Against Lincoln National and MetLife**

The reasonable expectation doctrine is recognized in some jurisdiction as an interpretative tool that "resolves an insurance policy ambiguity in favor of the insured's reasonable expectations." *Burlington Ins. Co. v. Greenwood Rollerdome, Inc.*, 420 F. Supp. 3d 632, 644 (W.D. Ky. 2019). Whether or not Ohio recognizes the reasonable expectation doctrine as an interpretative tool,[2] Ohio clearly does not recognize any independent "reasonable expectation" cause of action. *See, e.g.*, *Park-Ohio Indus., Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1223 (6th Cir. 1992) (discussing the reasonable expectation doctrine as a tool for interpreting ambiguous contracts). In his opposition brief, Dr. Kalus does not provide any authority that suggests otherwise and, in fact, seems to concede that the reasonable expectation doctrine is, at most, an interpretative tool. (*See* Doc. 15, at 9.) Accordingly, Count Four fails to allege any cognizable cause of action and it is dismissed as a matter of law.

    **3. Count Five – Equitable Estoppel Against Lincoln National and MetLife**

Defendants contend that Count Five must be dismissed because Ohio law does not recognize a cause of action for equitable estoppel. (Doc. 10-1, at 6 (citing *EHPLabs Rsch., LLC v. Smith*, 2022 WL 3139604, at * (N.D. Ohio Aug. 5, 2022) ("'[U]nder Ohio law, equitable estoppel is a defense and

---

[2] Defendants contend that "Ohio refuses to recognize the doctrine of 'reasonable expectations' as an interpretive tool." (Doc. 10-1, at 6 (citing cases).) Dr. Kalus counters that "[w]hile the doctrine has not been explicitly adopted in Ohio, many Ohio courts have utilized it." (Doc. 15, at 9 (citing cases).) The terms of the contract are not before this Court on the present motion and, therefore, it would be premature for this Court to consider the applicability of the reasonable expectation doctrine as an interpretative tool under Ohio contract law.

not an independent cause of action.'" (citation omitted))).) In response, Dr. Kalus concedes that equitable estoppel is "not an independent cause of action." (Doc. 15, at 10.[3]) Accordingly, Count Five fails to allege any cognizable cause of action and it is dismissed as a matter of law.

### 4. Count Six – Declaratory Relief Against Lincoln National and MetLife

In Count Six of his Complaint, Dr. Kalus seeks a declaration that Dr. Kalus was totally disabled as that term is used in the Policies and entitled to total disability benefits under the Policies and lifetime disability payments under the Second Policy. Defendants contend that Count Six should be dismissed because the requested declaratory relief merely duplicates Dr. Kalus's breach of contract claim. This Court agrees.

The Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . ." 28 U.S.C. § 2201(a). The Sixth Circuit has outlined five factors (the "*Grand Trunk* factors") a court can consider when determining whether to exercise its discretion to entertain a declaratory judgment action:

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

---

[3] Dr. Kalus contends that the doctrine of equitable estoppel is relevant to his breach of contract claim. Defendants' motion only concerns equitable estoppel as a non-cognizable cause of action. Accordingly, any other applicability of equitable estoppel is not before the Court as this time.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Notably, courts in the Sixth Circuit typically "'deny declaratory relief if an alternative remedy is better or more effective.'" *Krawczyszyn v. Columbian Life Ins. Co.*, 2021 WL 2722514, at *2 (N.D. Ohio June 30, 2021) (quoting *Putman v. Allstate Ins. Co.*, 2021 WL 1580836, at *3 (S.D. Ohio Apr. 22, 2021) (citing *Grand Trunk W. R.R. Co.*, 746 F.2d at 326)).

Here, Dr. Kalus's breach of contract claim (Count One) alleges that Lincoln National's breach deprived Dr. Kalus of "total disability benefits and the lifetime benefits due under [the Policies]." (Doc. 1 ¶ 35.) Almost identically, Dr. Kalus's claim for declaratory relief (Count Six) asks this Court to declare that "Dr. Kalus was totally disabled if he became totally disabled from his occupation of Interventional Cardiologist and that he is entitled to total disability benefits under both policies and lifetime disability payments under the Second Policy." (*Id.* ¶ 68.) Because the declaratory relief that Dr. Kalus seeks in Count Six mirrors that of his breach of contract claim in Count One, his "claim for declaratory judgment . . . has already ripened into a cause of action for breach of contract, and thus, declaratory judgment on these issues is duplicative and unnecessary." *Gregor v. Rice Drilling D, LLC*, 2024 WL 169119, at *4 (S.D. Ohio Jan. 16, 2024) (quoting *Gutierrez v. Selection Mgmt. Sys., Inc.*, 2022 WL 2208761, at *9 (S.D. Ohio June 21, 2022), *dismissed sub nom. Gutierrez, co-Tr. of Charles & Rita Bailey Living Tr. v. Selection Mgmt. Sys., Inc.*, 2022 WL 18396146 (6th Cir. Sept. 22, 2022) (citing *Putman*, 2021 WL 1580836, at *3 (citing cases))).

Dr. Kalus summarily contends in his opposition brief that Count Six is not duplicative of Count One because "any retrospective relief granted by the Court would not resolve the Parties' future rights and obligations under the disability policies." (Doc. 15, at 11.) Dr. Kalus, however, does not explain, nor do the allegations in the Complaint suggest, any "future rights and obligations" that

would be left unresolved after the disposition of Count One. Rather, as Defendants point out, if Dr. Kalus succeeds on his breach of contract claim, he will be entitled to total disability benefits and lifetime benefits under the Policies—the same declaration he seeks in Count Six. (Doc. 16, at 7 ("If Dr. Kalus prevails on his breach of contract action, then Total Disability benefits are payable under the contracts.").) Contrarily, if Lincoln National prevails on the breach of contract claim, then, based on the allegations in the Complaint, Dr. Kalus is not entitled to any additional benefits for his disability claim. Rather, he is entitled only to the residual disability benefits Defendants previously afforded him. Under those circumstances, a declaratory judgment that "Dr. Kalus was totally disabled if he became totally disabled from his occupation of Interventional Cardiologist and that he is entitled to total disability benefits under both policies and lifetime disability payments under the Second Policy" (Doc. 1 ¶ 68), would be nonsensical because, according to the Complaint, the Policies "both provided for a total disability benefit to age 65 if disability started before Dr. Kalus'[s] 65th birthday" (*id.* ¶ 17)—which has now passed.

Additionally, although not cited or argued by the parties, the relevant *Grand Funk* factors weigh in favor of dismissing Count Six. Issuing a declaratory judgment would not settle the parties' controversy, as Dr. Kalus also seeks damages as a result of the Lincoln National's alleged breach of the Policies. Although a declaratory judgment would serve some useful purpose in "clarifying the legal relations at issue," the breach of contract claim is "an alternative remedy that is better or more effective" because it will resolve the entirety of the parties' dispute. Accordingly, an analysis of the relevant factors supports the Court's decision to decline to address Dr. Kalus's claim for declaratory relief.

For all the aforementioned reasons, the Court declines to exercise its jurisdiction over Dr. Kalus's claim for declaratory relief and, accordingly, it is dismissed.

**CONCLUSION**

For the foregoing reasons, Metropolitan Life Insurance Company's and the Lincoln National Life Insurance Company's Partial Motion to Dismiss Plaintiff's Complaint is GRANTED. This case will proceed with Count One (breach of contract against Lincoln National) and Count Three (lack of good faith against Lincoln National and MetLife).

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  9/3/24